Avalos v. HUD. Mr. Reiner.  You have reserved five minutes of your time for rebuttal, correct? Yes. Did I pronounce your name correctly? Yes. Thank you. Okay. You may proceed. Thank you. I'm Richard Renner from the College RV, Choosey, Newman & Fitch firm. I represent Edward Avalos here, the petitioner. The parties here are in agreement that Edward Avalos committed no misconduct whatsoever. He was a good performer. Does Mr. Avalos have any proof of improper motivation, political motivation to terminate him other than the article he submitted to the administrative judge? Well, there's no direct evidence, but there's never been a requirement that a discriminator admit to their discrimination. No, no. That wasn't my question. Yes. My question was, does he have anything else? So we permit both direct and circumstantial evidence. This would be a case of circumstantial evidence. Well, what is your circumstantial evidence? The circumstantial evidence would be the timing that ... I mean, isn't that the whole point of the very rule that you are not allowed to move political appointees into career positions at the end of an administration? So if that timing itself were evidence of discrimination, then it would always be discrimination. This is an anti-burrowing in rule, isn't it? This is a policy of OPM, but the legal standard for deciding this case begins with a requirement for ... But if that's the rule and it's applied uniformly, and there's no suggestion that OPM targeted Mr. Avalos in any way here, is there? Well, that is the timing argument. It wasn't initially ... But that's not good enough. This rule is always going to be applied in this circumstance, isn't it? That's the entire point of the anti-burrowing in rule, to prohibit holdover political appointees from prior administrations to burrow into the career service right before the administration ends. Well, the requirement is that an agency evaluates such applicants in a non-discriminatory manner and that they get OPM permission. And there's no dispute here that they failed to get OPM permission before the appointment was made. But that was not the fault of Mr. Avalos. He fully disclosed- Nobody says it was his fault. And what I asked you for, and what Judge Hughes is addressing is, was there any ... You're saying the timing was circumstantial evidence. Are you saying by that, that there is no other evidence of an invidious political intent? No. The deviation from normal practice is another indicator. What deviation from normal practice? Well, they were supposed to give him 30 days notice before they remove him, but they only gave him 14 days. They were supposed to disclose to OPM who the selecting official was, but there's no record that they did this. They are supposed to provide- They were supposed to comply with OPM's regulations in the first place before selecting him involving an official he knew from his work at a prior agency. Who had no role in the selection when she saw his name on the- But that's not actually true because she wrote the criteria for the second solicitation, did she not? And she's the one that wrote in the Spanish requirement. And she had seen his name on the prior list as well, had she not? No. No, she had not. She recused herself as soon as she saw her name and she added in the same- On the second one, was she not aware that he'd applied on the first one and didn't make the list? That's correct. That's correct. And then she wrote the requirements. I'm sorry, I didn't hear you. And then she added that Spanish language requirement. The Spanish language requirement was added before the first announcement due to a- No, it was a preference. It wasn't a requirement. Isn't that the record that it wasn't a requirement and the personnel office said if you want this to be a requirement, you have to write it in the job description, not just as a preference? Right. And her testimony was she made that decision before she knew Avalos was going to be a candidate. But it wasn't a requirement for the first go-round. My understanding was that it was a requirement for the first go-round, but I'll be happy to check the record on that. The deviations from normal practice include the failure to give proper notice, failure to give the materials relied upon, failure to allow the normal time for preparation of response. Do those procedures apply where you have an employee who is illegally hired from the outset? Yes. Yes, they specifically do. And that, for example, is the holding in the Devine versus Sudemeister case of the Federal Circuit in which an arbitrator considered a case of an employee who had failed to disclose a prior conviction and other employment in a court-martial in his SF-86. And the case went to arbitration, the arbitrator said this was misconduct, it deserves discipline, but then the arbitrator mitigated the removal. Is your response the same where there's an absolute statutory bar that's been violated? Well, we have no such absolute. No, but I'm asking you whether your arguments would still apply under that situation. Well, the situation would be different if there were an absolute statutory bar. But the burrowing in rule is not a statute. Congress has not addressed this issue. And indeed, this court has never addressed what it means to regularize an appointment, as OPM calls it, or required in this case. So these absolute statutory bars, there are not many of them. And in cases, for example, the Bridgman case, where there's an executive order saying we'll only hire U.S. citizens, we have certain exceptions. And the fact that there are certain exceptions means it's not absolute and MSPB retains its jurisdiction. And the same applies here. OPM said that you can get a variance, there's a regulation that says you can get a variance. So this is, we're not dealing with an absolute. Let me make sure I understand your argument. You're not arguing that he was improperly hired. You're arguing that regardless of what happened at that first stage, in the second stage, he was denied certain employee status. Yes. Most importantly, he was removed without a finding of such causes will promote the efficiency of the service. How is that possible? He was removed because the agency failed to comply with the Berry Memorandum. And the Berry Memorandum certainly promotes the efficiency of the service because it promotes embarrassment principles. Well, so does retaining federal employees when they perform well. But the agency gets to make the call on what it thinks is the efficiency of the service. And then the AJ reviews it, and we review that for substantial evidence. The fact that they could have asked for a variance doesn't mean they had to ask for a variance. I frankly disagree with that. I don't see how they can establish that they had such causes will promote the efficiency of the service. You don't think complying with merit systems principles against partisan hiring promotes the efficiency of the service? I think if you look at the merits of this case, where Mr. Avalos was the only qualified applicant on that second cert list. And the agency determined that he still would have been selected even without consideration of the Spanish language requirement. But they couldn't determine that his hiring was free of political bias. Well, that was mostly because they hadn't retained and preserved their own records. And they didn't even check for their normal record of who was the selecting official. It was Ms. McBride. Can I just ask you the basic question? Do you think failure to comply with the Berry Memorandum is a sufficient basis under the efficiency of the service standard? I don't think it is in this case. Okay. No, no. I didn't ask you in this case. Is failure to comply with OPM's Berry Memorandum a sufficient ground to remove for efficiency of the service? I think that's problematic. And I think HUD's been- Okay. Well, let's move on. I disagree with you on that. Let's move on to a new point. Why isn't there substantial evidence to support the agency's decision that it failed to comply, which you can't dispute, and that it couldn't determine on the record that it was free of partisan bias? Why isn't, based upon all the testimony and all the evidentiary record, that is sufficient to support the ADA's finding? I know you disagree with it, but we're on a substantial evidence standard here. We're on substantial evidence when we're looking at a factual issue. But before that comes the legal issue of whether or not the administrative judge used the correct legal standard. And I contend that he did not, because nowhere in the initial decision do you find the judge saying this removal promotes the efficiency of the service. This is the ancient requirement, the core of our civil service system, that once you're an employee, you get to continue an employment, unless there is such clauses will promote the efficiency of the service, which in our net, the Supreme Court said is equivalent to just clause in the private sector. And that's very hard- But it's not just misconduct. Misconduct performance. I think, you know, in page 36 of HUD's brief, in the footnote, they recognize it as a difficult standard for them to meet in cases like this, where you have a- You can't find a misconduct. Or poor performance. But yes, you need to find some fault on the part of the employee. What's your support for that? Well, I think the- Efficiency of the service. The DeVine versus Sudermeister case is an excellent point on this subject, where the arbitrator said that, you know, the misrepresentations on the application, you know, may make the application voidable, but not unreviewable. And the arbitrator determined that good performance after hire showed that removal was not going to promote the efficiency of the service, and mitigated the termination to 30-day suspension. But the agency is not arguing that it was unreviewable. They're arguing that failure to comply with certain merit principle, as espoused in the Berry Memorandum, is sufficient to remove the employee. Let's just- Again, you're going back to a legal question that I said I disagreed with about. So, I mean, you can keep arguing it, but assume I disagree with that, then where is the lack of substantial evidence that the agency couldn't rely on the failure to comply with the Berry Memorandum? It seems to me that there's sufficient evidence here. You mentioned some of the, what you call, improprieties in the removal process. That they shortened the time period and the like. Which they admittedly did. Right. Where did you establish harmful error from that? Well, the denial of the 30 days is harmful, first and foremost, because my client lost 16 days of pay. That's material. That's dollars and cents. But more substantively, he lost the opportunity to search around and find a lawyer who actually had experience in federal civil service matters. He found some local lawyer who really had no familiarity in this area, and it took a SBB appeal. That really is material. It really makes a difference to have time to prepare your case. And that's part of why the 30 days is an important requirement. From HUD's point of view, they were obviously rushing to try to get him fired before- How does that, I mean, what impact, if we determine that the agency proposed this removal for violation of the Berry Memorandum, that the agency established that it could not regularize the appointment, as OPM required, and that there's substantial evidence to support that, how does the failure to obtain what you call qualified counsel impact that? I do believe that there is inherent value in our justice system for people to find, retain, and have- Sure, sure. Absolutely. But it's a harmful error analysis, and you have to show that how that would have impacted the ultimate decision. And if we uphold the ultimate decision, how would the failure to have you or somebody you find less qualified make any difference on the actual merits of the case? Well, I do also disagree with the requirement that it be harmful error, because 7703 specifically says that- But that, I mean, the agencies are allowed to shorten that time period anyway, aren't they? It's a procedural rule, and procedural rules are subject to harmful error analysis. I mean, there's precedent from this court on that. You know that. Well, there is, but that's not what the text of the statute says in 7703C. Well, we're bound by the precedent of this court, and this court has definitely found that violation of procedural rules in this context are subject to harmful error analysis. It's basic APA law. All right, well, that's not what the Congress set out as the requirements for a procedure in this matter. And my client was- Congress sets out all kinds of procedures all the time, and courts routinely subject a violation of procedural rules set out by Congress to a harmful error analysis. If that's your best argument, then you can have a conflict- No, no. You haven't let me get to my best argument. My best argument- Why are you arguing all this subsidiary stuff, then? Because you're asking me questions. Well, you didn't start off with your- What is your best argument? My best argument is that under 7513A, Congress requires that there be a finding of such cause as will promote the efficiency of the service, and that is absolutely missing- I thought we'd already talked about that, and that the cause that the agency provided was it was in a legal appointment, and therefore, he had to be removed to promote the efficiency of the service to comply with merit systems principles. Well, there is no statute that says you cannot hire someone who used to be a political appointee. It doesn't have to be a statute. OPM has broad authority to promulgate guidelines, and in fact, even though there's not a statute on the Berry Memorandum, isn't there a statute requiring them to report on the instances to report to Congress on the instances of this burrowing in? Doesn't that indicate that Congress is concerned about this whole process? Well, no doubt Congress should be concerned, but Congress has not said that agencies cannot hire someone without OPM approval. Congress has not said that you have to notify OPM. These are OPM policies, you should incorporate it through the Berry Memo. They are not absolute statutory bars, and there's an exception in the variance process. OPM has the authority to make these hiring policies, does it not? But that doesn't make them unreviewable. That's what the divine versus pseudomonitor case is. Nobody's saying they're unreviewable. The administrative judge did say it was unreviewable. Well, the administrative judge also said that the hiring was not appropriate under the Berry Memorandum. He said he couldn't review OPM's determination. Even if we review OPM's determination, it's undisputed that they didn't comply with the Berry Memorandum. Yes, but an impropriety in hiring doesn't change the fact that Avalos became an employee and he was entitled to continue in employment, except upon such causes will promote the efficiency of the service. Let's stop on that point. I think Judge, I want to catch the question. This is brief. You make a point in both the opening and in the reply that Mr. Avalos, you say, served for almost seven years at USDA and because his service at USDA and so on, it was continuous at HUD. Yes. But that's not civil service, is it? Yes, it is. This is the definition of an employee at 7511, where- A political is a civil servant? Well, they're not an employee with civil service protections while they are serving in a political appointment. But once they become employed in the competitive service, the time they served as a political appointee contributes to their continuous current service. At that point, there's no probationary period? That's correct. That's a result of our McCormick decision, right? Exactly. It's in the disjunctive. And you could be both a probationary employee at HUD and still be an employee under 7511 entitled to MSPB review and continuation of your employment, except upon such causes will promote the efficiency of the service. This is the ancient Lloyd La Follette standard that protects our federal civil service. Okay, let's hear from the other side now. We'll restore your rebuttal time. Counselor Speck, right? Good morning, Your Honors. Elizabeth Speck for the United States. May it please the Court. We respectfully request that the Court either vacate the decision of the MSPB for lack of jurisdiction or sustain the decision of the administrative judge. Would action against someone because of the political status of the administration that appointed him previously constitute partisan political discrimination? No, Your Honor, and that's because, as we've explained in our brief, this is a procedure that has been consistently applied, at least we have dating as far back to the Carter administration, that every informer political appointee who wants to become a competitive service appointee has to go through this review process. For example, if it's not- That wasn't my question. Oh, I'm sorry, Your Honor. My question was, would action against someone because of the political status of the administration which previously appointed him constitute partisan political discrimination? Yes, Your Honor. I mean, the definition under Mastriano is because of partisan political activity, but we simply don't have that in the record. We have evidence of OPM conducting its typical review process, which it does for any political appointee who has been an appointee in the past five years who wants to become a member of the- who wants to work in the competitive service, for example. When OPM does this review process, is it doing that pursuant to its internal regulations? Your Honor, it stems from a variety of statutory authority. As we've gone through in our brief, there is 5 U.S.C. 1103, which authorizes OPM to enforce the civil service rules. 5 U.S.C. 1104 B.2 and C. authorize OPM to oversee hiring and to order corrective action, and it also, under 1303, possesses the- 5 U.S.C. 1303 possesses the authority to investigate the administration of competitive examinations. The civil service rules, which are under- which are in parts 1 through 10 of the regulations, 1 through 10 are in part from the presidential delegation at 5 U.S.C. 3301 through 3302, which authorize OPM to implement procedures- So, I would imagine that this isn't the first time this situation has happened, where you have OPM, for some reason, does not conduct this review that you're referring to. And if that's the case, is it always the situation where the hire is an illegal hire? Your Honor, surprisingly, we didn't encounter very many cases about this, as you can see in our brief, but yeah, the position is that OPM here requests the agencies to provide this- to complete the checklist that's at 176 through 178 of the appendix beforehand so that it can conduct this review. OPM also doesn't just leave it to the agencies, it conducts oversight and looks at a variety of information to determine if there have been hiring of former political appointees without going to OPM. If that's the case, then OPM investigates the appointment, and there are options. There is the possibility that they could, if OPM finds issues with the appointment, it could tell the agency to, here, regularize the appointment, which means to make it legal. What does that mean? What does- Yes, Your Honor. Regularize the appointment means to make it legal. They can either find another hiring authority. For example, if there's a way to appoint the person, the individual non-competitively. Also, there is the ability to ask for retroactive approval- In this situation, HUD regularized it by saying, this was an illegal hire, and therefore, we're terminating his employment. Well, Your Honor, they- yes, that- they determined there was not another avenue to make it legal. There was- they looked to see if there was another appointing authority. This question is important to me for several reasons, but does that mean, once HUD made that decision, when OPM went back to HUD and said, we want you to regularize this appointment, and they said, okay, we are. We've looked at everything anew, and this appointment was illegal. Does that mean that that illegality stretches back to the date of the- that the appointment was made? Yes, Your Honor. There's no dispute that the agency did not follow the procedures that, here, HUD, working through its shared service provider, did not follow the procedures for hiring a former political appointee. The appointment was essentially made ultra viris because there was not- that, here, OPM, through its- its wide and broad authority to- to implement the civil service principles. And if that's the case, in this situation, then that really impacts whether Mr. Avalos was- had civil service protections, right? Your Honor, we- we would submit the- that it's not really a question of Mr. Avalos. The issue here is the problem with the appointment. So, it's- it's, of course, easy to look at- at the- at the individual who has brought this case, but the fact is, this concerns OPM's authority to correct an illegal appointment. The fact is, again, there- there is- there was no authority to make the appointment. I'm asking you this because you're- you're- your colleague on the other side is arguing what seems to me to be the- the cart before the horse. He wants us to look at the effect that- that the denial of civil service protections had on- on- on the decision. And it seems to me that the first question is whether the hire was legal or not. And if it was not legal, was he ever entitled to civil service protections? Your Honor, it's our position that the hiring was not legal because the- the- the- the OPM is indicating- Yeah, sure. Let's take that it wasn't legal, but then answer the follow-up question, was he ever entitled to civil service protections? No, Your Honor. The- the position- What's your basis for that? Our position is because there was, again, the- the- the best statutory authority we have, aside from the authorities that I- I've gone through about OPM's broad authority, is that, you know, the very definition of an employee at 5 U.S.C. 2105 is an individual appointed to the civil service by an official acting in an official capacity. And here, there is no authority to hire someone where they have not followed the procedures from OPM. It is, in fact, correcting the illegal appointment. And the- the cases that- Are you arguing that he's not an employee under 75, whatever? Yes, Your Honor. I mean, I- there's some facial appeal to that, but isn't- the problem is, isn't that foreclosed by our decision in McCormick? Your Honor, we- well, setting aside the- our first argument is that there's- there's no employment status because there was no official with authority. In terms of whether he was- That- yeah, set that aside. I have some questions about that because I- I'm not aware of any kind of case law or argument on that point that we've heard before. But under the definition of employee as- as interpreted by McCormick, he falls within the competitive service employee standards, doesn't he? Your Honor, no. That- under 7511, the focus under subpart A, we're looking at an individual in the competitive service and the- the provision here that he's relying on to say that he is more than an employee under its initial appointment is who has completed one year of continuous service under other than a temporary appointment. We would submit that the focus of this subchapter is an individual in the competitive service and we would- But he was in the competitive service at the time he was serving. It doesn't say that all of his service has to be in the competitive service, does it? And isn't there case law to the contrary on that? We would submit, Your Honor, that- that- that the prior case law, the McCormick case, dealt with two initial probationary periods in the competitive service and that none of the cases that have been cited deal with a specific service which is peer- political appointee service which has a specific exclusion- Well, that's- I mean, again, I think you have- there's some facial appeal to that argument, but McCormick does a very plain language look at- at 7511 and says it has two requirements that are in the subjunctive and if he meets one of them, which is he's an employee in the competitive service who served continuously for more than one year, I'm paraphrasing, then he falls within that definition and doesn't he meet all three of these? He was an employee in the competitive service who had served continuously for more than a year, counting his prior service. Is there any case law or statute that says political service as a schedule, whatever he was, doesn't count? And let me- let me interject an additional question on that. You use the phrase ultra-virus in- in an affectionate- what you're saying is that that employment is a nullity. And so I- I think the same question is what's your legal authority for that? I- I may- my Latin may not- may not have been perfect, Your Honor, but our legal authority is that the court should not re- again, that the focus of- in terms of the 70- 7511A1-A2 is that the- again, the focus is on the competitive service and that the- the long-standing statutory authority that the court is not to interpret the statute so as to give no effect to a certain section. And this basically puts- But let me ask you hypothetically, if instead of former political service, which doesn't entitle him to employee status under 7511 at all, he had served in the accepted service, which is covered by, I think, subpart C, right? And he served in that for over a year and then transferred to the competitive service. Would he qualify as an employee under A then? I believe the individual, if you're referring to- I mean, don't we have cases like that? A1C, but that also has a different regulation who has completed two years of continuous service. No, but I- but that's not what- listen to the hypothetical. He had- he was appointed initially into the accepted service. He served for over a year in the accepted service, applied for and got a competitive service job, and served for less than a year. But cumulatively, it served over a year. Wouldn't he be, under our McCormick decision, an employee in the competitive service with current continuous service of over one year? Is there anything that requires that? You're saying that current continuous service language in all these parts has to be in the specific category, but the statute doesn't seem to say that. Well, the statute certainly has, in subsection C, specific requirements for what constitutes continuous service, that it be in the same or similar position. And here, the- But that's for the accepted service, right? Not for the competitive service. Oh, yes, Your Honor. Then there- and here, the employees- the administrative judge determined that that would not apply because he hadn't served in the same agency and it hadn't been the same type of service. Again, the court's interpretation gives essentially every political employee- it eliminates the probationary period requirement. It gives them an advantage- But that's the whole point of McCormick, right? I mean, McCormick, I think, as it acknowledged, there's some strong legislative history to suggest that the outcome there wasn't- Congress didn't intend the outcome there, but it did a plain language approach and it said, look, it uses or, not and. And so, even if they haven't completed their probationary period at the agency, if they've qualified under the second part, current continuous service, then they're an employee. Isn't that what McCormick says? Again, Your Honor, that didn't- Look, I know the government disagreed with McCormick at the time and probably sought rehearing and it was denied and we're stuck with it, aren't we? Yes, Your Honor. Again, just to distinguish McCormick, it was two probationary periods in the competitive service. It didn't deal with a specific- I understand, but you can't confine it to its facts. You have to follow its reasoning and its reasoning is pretty broad, that if you qualify, I don't, can you just move on to the merits and not talk about this jurisdiction anymore because you're running out of time? Your friend on the other side wants to argue that a removal for violation of the Berry Memorandum is not an efficiency of the service removal and it's not permissible, that it What's your response to that? As we argued in our brief, the efficiency of the service, we didn't find a specific case that held this, but it's our position that the efficiency of the service is upheld when the merit systems principles are upheld and here clearly under the statutes, the merit systems principles require that appointments be free from political influence, that they be consistent with merit systems principles and free from political influence. Well, there's a reason, isn't there, for the presumption that an agency follows the law? That is to say, when an agency doesn't follow the law, there's a reason, there's a distinction there. Yes, Your Honor, and I think the MSPB has made this point in several decisions. The point is to encourage agencies to comply with the civil service rules. Here, OPM only has the authority, it has authority to promote, promulgate procedures and to conduct investigations, but this ensures that the civil service rules are followed in the employees and have confidence in that. In terms of the court, I believe had a question, there's been some question about the Spanish requirement. We would submit that this, there is substantial evidence in the record that supports HUD's conclusion that it could not, it could not do anything other than separate Mr. Avalos. We would point to the court's, the court to appendix 153 through 155 that OPM would have not approved Mr. Avalos' competitive service appointment had HUD sought our prior, our prior approval prior to selection as it should have, and therefore HUD must regularize the appointment. In terms of the Spanish requirement, which the court had asked about, and this was discussed more at appendix 441, it talks about the fact that the first posting listed Spanish as a selective placement factor, but did not amend the position description to add duties in support of the selected placement factor. We would emphasize to the court that there was a qualified veteran, there was, the selective placement factor was never properly vetted, therefore there was a qualified veteran that Mrs. Trevino did not follow the appropriate procedures to pass through, to pass over a veteran. Finally, Mr. Avalos has claimed that another issue that has come up is the fact that, is whether there were, is information about the fact that Mrs. Trevino had not excluded herself from, was still the, the listed on the certificate, and we just point the court to appendix page 599 which outlines those procedures. Thank you. We restored your time to four minutes. Thank you. Let me start at appendix 5, the initial decision, three lines up from the bottom is the word non-reviewable, where the administrative judge found that OPM's directive to regularize was non-reviewable. You know, it still disturbs me that we have no definition of what... But that doesn't go to the question of whether the agency's decision to remove him for failure to comply support is, is connect, is justified by the efficiency of the service method. Even if we can't review OPM's determination that you need to regularize this, what we're looking at is the agency's ultimate removal decision, and although the government makes jurisdictional arguments, assume we agree with you that we can review that ultimate removal decision, which is whether a removal for failure to comply with the Berry Memorandum promotes the efficiency of the service. Those are two different questions, right? Agreed. So the AJ went ahead and reviewed that second question, did he not? Correct. But did so basically accepting the testimony of HUD officials that the only way to regularize was to remove, and ignoring the opportunity to seek a variance, just saying that, well, it's not required by law that you apply for the variance. But also, it's not required by law that you remove Avalos once he becomes an employee because of an agency error in the selection process. Does it have to be required by law? Isn't it just that the removal justify, or is justified by the efficiency of the service? Well, it does need to meet that standard. The administrative judge never addressed that standard, and that's my legal argument that the wrong legal standard was used below. What standard do you think he used? I think he kicked the can over to OPM saying, well, this is OPM's decision, we have to do what they say. But he reviewed the agency's evidence of why they couldn't regularize, and credited it, right? I mean, what other evidence would he have been reviewing if he had reviewed the removal action for the efficiency of the service, but for the agency's decision that it could not regularize, and the testimony and the documents he relied on? He needed to consider Avalos' service, and whether or not continuing Avalos' service would have promoted the efficiency of the service. And the undisputed evidence that he was a good performer, performed very well, pleased to supervise. This wasn't a performance removal, and it wasn't a misconduct removal. It was a removal based upon the agency's failure to comply with merit system principles. I know you want to argue that that's not permissible, but I'm not interested in hearing that. I'm interested in hearing whether that decision is supported by substantial evidence. I mean, we've got your argument, that that's not a legally permissible basis for efficiency of the service. And we can go into detail about the Keystone Cop's nature of how HUD handled the OPM review. They simply did not provide OPM with the correct information that we discovered in the hearing. I mean, that's the A.J.'s job. It's not our job on review to do a de novo look at the agency's evidence and the like. It's whether there's substantial evidence supporting the agency's decision. And also whether it's in accordance with the law. And this removal is not. The administrative judge used the wrong standard. And when you apply the correct standard, the efficiency of the service, you have to look at his performance, whether or not he committed misconduct. And without such clauses about the efficiency of the service, the removal is not in accordance with law. Thank you very much. Thank you. Our next case is Smart Meter Technologies.